UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
ORLANDO DIVISION

**JONATHAN J. GODWIN,** *and other similarly situated individuals*,

        **Plaintiff,**

v.                                                  Case No:   6:19-cv-1643-Orl-37EJK

**IMCMV DAYTONA LLC,**

        **Defendant.**
_____/

## REPORT AND RECOMMENDATION

This cause comes before the Court on the parties' Joint Motion for Settlement Approval ("the Motion"). (Doc. 41.) Upon consideration, I respectfully recommend that the Motion be Granted in part as set forth herein.

**I.   BACKGROUND**

On August 22, 2019, Plaintiff Jonathan J. Godwin (the "Plaintiff") filed this putative collective action[1] naming IMCMV Holdings Inc. ("IMCMV Holdings"), and IMCMV Daytona LLC, d/b/a Landshark Bar & Grill Daytona Beach ("IMCMV Daytona") as Defendants. (Doc. 1.) Plaintiff filed an Amended Complaint, naming IMCMV Daytona as the sole Defendant, after voluntarily dismissing IMCMV Holdings. (Doc. 20.)

The Amended Complaint alleges that Plaintiff was employed by Defendant as a non-exempted, full time, hourly restaurant employee, from on or about January 6, 2018, through approximately July 05, 2019, during which he performed different duties and was compensated at different rates. (Doc. 20, ¶¶ 14–15.) Plaintiff asserts that he was not compensated for all regular

---

[1] Though Plaintiff characterized this action as a collective/class action, at no point did Plaintiff move for class certification, nor did any opt-in plaintiffs voluntarily join in this action.

and overtime hours worked because the Defendant did not properly credit all the hours he worked at each position and its corresponding rate of pay throughout each work week. (*Id.*)

The Amended Complaint alleges that Defendant violated the minimum wage and overtime wage provisions of the Fair Labor Standard Act of 1938 ("FLSA"), 29 U.S.C. §§ 206(a), 207(a)(1). (*Id.* ¶ 22–24.) Plaintiff and Defendant negotiated a compromise and settlement of Plaintiff's claims and filed a motion for approval of their settlement agreement (the "Settlement Agreement") (Doc. 37-1), pursuant to *Lynn's Food Stores, Inc. v. United States*, 679 F.2d 1350, 1354–55 (11th Cir. 1982). (Doc. 37.)

## II.   STANDARD

"The principal congressional purpose in enacting the Fair Labor Standards Act of 1938 was to protect all covered workers from substandard wages and oppressive working hours, 'labor conditions [that are] detrimental to the maintenance of the minimum standard of living necessary for health, efficiency and general well-being of workers.'" *Barrentine v. Arkansas-Best Freight Sys., Inc.*, 450 U.S. 728, 739 (1981) (alteration in original) (quoting 29 U.S.C. § 202(a)). "Any employer who violates the provisions of section 206 or section 207 of [the FLSA] shall be liable to the employee or employees affected in the amount of their unpaid minimum wages, or their unpaid overtime compensation, . . . and in an additional equal amount as liquidated damages." 29 U.S.C. § 216(b). Section 206 establishes the federally mandated minimum hourly wage, and § 207 prescribes overtime compensation of "one and one-half times the regular rate" for each hour worked in excess of forty hours during a given workweek. The provisions of the FLSA are mandatory and "cannot be abridged by contract or otherwise waived." *Barrentine*, 450 U.S. at 740. To permit otherwise would "'nullify the purposes' of the [FLSA] and thwart the legislative policies

it was designed to effectuate." *Id.* (quoting *Brooklyn Sav. Bank v. O'Neil*, 324 U.S. 697, 707 (1945)).

The parties seek judicial review and a determination that their settlement is a "fair and reasonable resolution of a bona fide dispute" over FLSA issues. *See Lynn's Food Stores*, 679 F.2d at 1354–55. If a settlement is not supervised by the Department of Labor, the only other route for compromise of FLSA claims is provided in the context of suits brought directly by employees against their employers under § 216(b) to recover back wages for FLSA violations. *Id.* at 1353. "When employees bring a private action for back wages under the FLSA, and present to the district court a proposed settlement, the district court may enter a stipulated judgment after scrutinizing the settlement for fairness." *Id.*

The Eleventh Circuit has held that "[s]ettlements may be permissible in the context of a suit brought by employees under the FLSA for back wages because initiation of the action by the employees provides some assurance of an adversarial context." *Id.* at 1354. In adversarial cases:

> The employees are likely to be represented by an attorney who can protect their rights under the statute. Thus, when the parties submit a settlement to the court for approval, the settlement is more likely to reflect a reasonable compromise of disputed issues than a mere waiver of statutory rights brought about by an employer's overreaching. If a settlement in an employee FLSA suit does reflect a reasonable compromise over issues, such as FLSA coverage or computation of back wages, that are actually in dispute; we allow the district court to approve the settlement in order to promote the policy of encouraging settlement of litigation.

*Id.*

When evaluating an FLSA settlement agreement, the district court considers both whether the settlement is fair and reasonable to the employee, or "internal" factors, and whether the settlement frustrates the purpose of the FLSA, or "external" factors. *Dees v. Hyrdradry, Inc.*, 706 F. Supp. 2d 1227, 1241 (M.D. Fla. 2010); *Moreno v. Regions Bank*, 729 F. Supp. 2d 1346, 1350–

51 (M.D. Fla. 2010).[2] Factors considered "internal" include: "(1) the existence of fraud or collusion behind the settlement; (2) the complexity, expense, and likely duration of the litigation; (3) the stage of the proceedings and the amount of discovery completed; (4) the probability of plaintiffs' success on the merits; (5) the range of possible recovery; and (6) the opinions of the counsel." *Hamilton v. Frito-Lay, Inc.*, No. 6:05-CV-592-ORL-22JGG, 2007 WL 328792, at *2 (M.D. Fla. Jan. 8, 2007). There is a "'strong presumption' in favor of finding a settlement fair." *Id.* (quoting *Cotton v. Hinton*, 559 F.2d 1336, 1331 (5th Cir. 1977)).[3]

### III. DISCUSSION

#### A. Settlement Sum

Plaintiff initially sought payment for unpaid wages and overtime in a range between $30,186.41 and $39,702.00, with interest and liquidated damages for any amount found to be due, as well as attorneys' fees and costs. (Doc. 22.) According to the Settlement Agreement, Defendant shall not pay Plaintiff any sum for his unpaid overtime and minimum wage claims, as the parties agreed Plaintiff's FLSA claim ultimately should be resolved and dismissed without payment of any settlement sum. (Docs. 37 at 2; 37-1, ¶ 1.)

Under 29 U.S.C. § 216(b), an employee damaged by a violation of the FLSA is entitled to unpaid overtime compensation plus an additional, equal amount, as liquidated damages. Title 29 U.S.C. § 216(b) ("Any employer who violates the provisions of [the FLSA] shall be liable to the employee . . . affected in the amount of their unpaid minimum wages, or their unpaid overtime compensation, . . . and in an additional equal amount as liquidated damages."). On review, the

---

[2] *See e.g. Brandys v. R.V. World, Inc., of Nokomis*, No. 2:18-cv-450-SPC-MRM, 2019 WL 7461688, at *1 (M.D. Fla. Nov. 30, 2019), *report and recommendation adopted*, 2020 WL 42852 (M.D. Fla. Jan. 3, 2020) (approving a FLSA zero sum settlement agreement under *Lynn's Food Stores* analysis).
[3] *See Bonner v. City of Prichard*, *Ala.*, 661 F.2d 1206, 1209 (11th Cir. 1981) (holding all decisions from the Fifth Circuit handed down prior to October 1, 1981 are binding on the Eleventh Circuit).

$0.00 sum Plaintiff has agreed to accept in satisfaction of his claims is fair and reasonable in light of the parties' representations in the Motion. Discovery has been completed and the parties agree that, upon a thorough review of all discovery, including Plaintiff's time-cards, corresponding pay records, and deposition testimony, Plaintiff was properly compensated for all hours he worked. (Doc. 37 at 2.) The Plaintiff is represented by experienced counsel capable of ascertaining through adequate discovery and review of Defendant's records whether the FLSA claim had any merit, as well as Plaintiff's desire to limit the cost of litigation.

Given this information, I recommend a finding that the settlement sum represents a fair resolution of a *bona fide* dispute between the parties and that Plaintiff has not unfairly compromised his claim.

### B. Attorney's Fees and Costs

The parties have agreed to a zero-sum settlement amount and that they shall each bear their own fees and costs, with the sole exception of a single payment of $400.00 to Plaintiff's counsel for costs unnamed in the Motion. (Doc. 37 at 2.)

Pursuant to 29 U.S.C. § 216(b), "[t]he court [in an FLSA action] shall . . . allow a reasonable attorney's fee to be paid by the defendant, and costs of the action." Here, Plaintiff agrees to resolve his FLSA claims with no monetary payment (Doc. 37 at 2).[4] Where parties

---

[4] It is unclear under *Lynn Food Stores* whether a court must approve an arrangement for payment of fees where a zero sum settlement has been agreed upon by the parties. See *Brandys* 2019 WL 7461688, at *1 (explaining that "[i]t is not clear to the Undersigned whether the Court is required under *Lynn Food Stores* and its progeny to approve the parties' agreement as to no payment of attorney's fees and payment of $628.47 in litigation costs because in the context of this case, the only claim involved that would provide for the recovery of attorney's fees was the FLSA claim Plaintiff is agreeing to resolve with no monetary payment.") However, as the parties did not assert argument that this Court need not approve the settlement as it applies to the $400.00 payment for costs, this Court shall not further address that issue here.

"represent[] that the plaintiff's attorneys' fee was agreed upon separately and without regard to the amount paid to the plaintiff, . . . the Court will approve the settlement without separately considering the reasonableness of the fee to be paid to plaintiff's counsel." *See Bonetti v. Embarq Mgmt. Co.*, 715 F. Supp. 2d 1222, 1228 (M.D. Fla. 2009); *see also Brandys*, 2019 WL 7461688 (approving a settlement agreement where the Plaintiff received a zero sum settlement amount but provided for the compensation of litigation costs as "the parties state that these matters were "agreed upon separately and without regard to the amount paid to the Plaintiff.").

The undersigned recommends approval of the Settlement Agreement as the Motion clearly states the $400 in litigation costs were agreed upon separately and without regard to the zero-sum amount agreed to by Plaintiff. (Doc. 41 at 2).

### C. Release

Although there is no provision in the Agreement titled "Release," the provision titled, "Mr. Godwin's Obligations to IMCMV Daytona," contains the following language that operates as a general release:

> Mr. Godwin shall not initiate or instigate any future judicial or administrative proceedings against IMCMV Daytona that in any way involve allegations or facts arising from the hours worked or compensation paid during his employment or engagement with IMCMV Daytona, or any alleged retaliation in any forum as of the date of execution of this Agreement, *including any claims brought under the Fair Labor Standards Act, Florida Minimum Wage Act, contract, or any federal, state, or common law*.

(the "Release") (Doc. 41-1, ¶ 3) (italics added).

"[A] general release of unknown claims in the context of an FLSA settlement, absent specific justification, is not consistent with a fair and reasonable resolution." *Id.* (citing *Bright v. Mental Health Res. Ctr., Inc.*, No. 3:10-cv-427, slip op. at 9 (M.D. Fla. Mar. 14, 2012)). Courts in this District have previously held that a plaintiff may release "wage-and-hour or related claims that

arise out of the facts alleged in the instant action," but that such a release is ineffective as to any wage-and-hour or related claim that a plaintiff may have arising out of *unrelated* facts or circumstances. *Coleman v. Target Corp.*, No. 6:12-cv-1315-37GJK, slip op. at 2 (M.D. Fla. Mar. 6, 2013).

In the Agreement, the Release is not limited to claims arising solely under the FLSA. The language "including any claims brought under the Fair Labor Standards Act, Florida Minimum Wage Act, contract, or any federal, state, or common law" indicates that the Release contemplates claims unrelated to claims for unpaid wage and hour or related claims arising out of the same facts or circumstances related to those in the instant action. This is the sort of pervasive, overly broad release that runs afoul of the FLSA because it attempts to release claims unrelated to those presented by Plaintiff's Complaint without justification or additional compensation

However, this Agreement contains a broad severability provision that provides:

> If any provision of this Agreement or the application thereof to any party or circumstances shall be determined to be invalid or unenforceable to any extent, the remainder of this Agreement and the application of such provisions to any other party or circumstances shall not be affected thereby and shall be enforced to the greatest extent permitted by law.

(the "Severability Provision") (Doc. 41-1, ¶ 8.)

Courts in this District routinely approve settlement agreements while striking unfair or unenforceable provisions of the agreement when the agreement contains a severability provision. *See*, *e.g.*, *Encarnacion v. Dannix Painting LLC*, No. 6:18-cv-682-Orl-41KRS, 2018 WL 5084749, at *3 (M.D. Fla. Aug. 13, 2018)*, report and recommendation adopted*, 2018 WL 5840509 (M.D. Fla. Nov. 8, 2018) (recommending that the contradictory provisions and the general release provision be stricken where the settlement agreement contained a severability provision); *Goern v. Everglades Day Safari, Inc.*, No. 2:16-cv-755-FtM-99MRM, 2017 WL 3328242, at *3 (M.D.

Fla. July 14, 2017), *report and recommendation adopted*, No. 2:16-cv-755-FtM-99MRM, 2017 WL 3316369 (M.D. Fla. Aug. 2, 2017) (recommending that the plaintiff's "waiver and general release" provision be stricken where the settlement agreement contained a severability provision); *Ramnaraine v. Super Transp. of Fla., LLC*, No. 6:15-cv-710-Orl-22GJK, 2016 WL 1376358, at *4 (M.D. Fla. Mar. 28, 2016), *report and recommendation adopted*, No. 6:15-cv-710-Orl-22GJK, 2016 WL 1305353 (M.D. Fla. Apr. 4, 2016) (recommending that the non-disparagement and confidentiality provisions be stricken from a settlement agreement that contained a severability provision). As the Severability Provision permits striking of "any provision of this Agreement or the application thereof to any party or circumstances…" (Doc. 41-1, ¶ 8), I recommend that the Court sever the portion of the Release that reads "Florida Minimum Wage Act, or any federal, state, or common law" from the Agreement. (*Id.*, ¶ 3.)

### IV.   RECOMMEDATION

Upon consideration of the foregoing, I **RESPECTFULLY RECOMMEND** that the Court:

1. **GRANT IN PART** the parties' Joint Motion to Approve Settlement Agreement and to Dismiss with Prejudice (Doc. 41);

2. **SEVER** the portion of the Release Provision that reads "Florida Minimum Wage Act, or any federal, state, or common law." (Doc. 41-1, ¶ 3);

3. **FIND** that the parties' Agreement (Doc. 41-1), as revised, is a fair and reasonable resolution of a *bona fide* dispute under the FLSA;

4. **DISMISS** the case with prejudice; and

5. **DIRECT** the Clerk of Court to close the file.

**NOTICE TO PARTIES**

A party has fourteen days from this date to file written objections to the Report and Recommendation's factual findings and legal conclusions. A party's failure to file written objections waives that party's right to challenge on appeal any unobjected-to factual finding or legal conclusion the district judge adopts from the Report and Recommendation. *See* 11th Cir. R. 3-1. **If the parties do not object to this Report and Recommendation, then they may expedite the approval process by filing notices of no objection.**

**RECOMMENDED** in Orlando, Florida on January 20, 2021.

_____
EMBRY J. KIDD
UNITED STATES MAGISTRATE JUDGE

Copies furnished to:

Counsel of Record